KIM TERESA HAINA

V.

COMMONWEALTH OF VIRGINIA

Record No. 850410

June 10, 1988

Present: All the Justices

W. Tayloe Murphy, Jr. (H. Marston Smith; Smith and Murphy, on briefs), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General; Jon H. McLees, Jr., Assistant Attorney General, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This is an appeal from an order forfeiting a motor vehicle to the Commonwealth pursuant to Code § 18.2-249. It raises questions concerning the sufficiency of the evidence and the effect of the Commonwealth's failure to file an information within 60 days of notice of seizure, as required by Code § 4-56.

In the spring of 1984, officers of the Virginia State Police maintained surveillance of a waterfront property in Lancaster County known as Kendall Hall, suspecting that a drug-smuggling operation was planned there. On May 4, 1984, a motor vessel named "Daddy Warbucks" docked at Kendall Hall. Obtaining search warrants for the property and the vessel, the police entered and seized some six tons of marijuana. Among other items seized was the subject of this proceeding, a 1975 Mercedes Benz 450-SL automobile, which the police found parked at Kendall Hall. The Mercedes bore California license plates and was registered to "Kim T. Hauna" (sic) of Fullerton, California. The owner was not present at Kendall Hall at the time of the search. The Commonwealth concedes that no contraband was found in the car.

Pursuant to the statutes hereinafter discussed, the Commonwealth's Attorney of Lancaster County gave written notice to the Commissioner of the Division of Motor Vehicles, on May 9, 1984, that the Mercedes had been seized on May 6. The notice re-

quested the commissioner to furnish a certificate listing owners and lienholders of record. Having received no response from the commissioner, the commonwealth's attorney wrote again on July 9, repeating the request. Ultimately, the commonwealth's attorney filed in the clerk's office of the Circuit Court of Lancaster County an "Information for Forfeiture," pursuant to Code §§ 18.2-249 and 4-56, on September 4, 1984, at least 118 days after the commonwealth's attorney had received notice that the vehicle had been seized by the police. Kim Teresa Haina filed a defense to the information, asserting that she was the lawful owner and that she was "without knowledge of any illegal use of said vehicle."

Along with numerous others arrested as a result of the events at Kendall Hall, Haina was indicted for conspiracy to distribute more than five pounds of marijuana. At a jury trial in the criminal case on March 6, 1985, after the Commonwealth had rested, the court sustained Haina's motion to strike the evidence.

On the same day, the court proceeded, without a jury, to try the information for forfeiture of the Mercedes. The court overruled a defense motion to dismiss the information on several grounds, one of which was the Commonwealth's failure to file the information within 60 days after the commonwealth's attorney's receipt of notice that the vehicle had been seized.

The Commonwealth presented the evidence of police officers and of admitted co-conspirators in the drug distribution scheme. They testified to a relationship between Haina and one Everett Charleston, then a fugitive, who was a principal in the conspiracy. Charleston frequently drove the Mercedes in Lancaster County. Although Haina's checkbook and birth certificate were found at Kendall Hall, the witnesses testified that they knew of no participation by her in any illegal activities. Charleston's co-conspirators had the impression that Charleston had concealed all knowledge of the drug operation from her and led her to believe that they were engaged in a cellular radio business.

Haina testified that she was a native of Hawaii and had met Charleston there when she was 18. She began living with him and moved to California with him. He acquired the Mercedes for her under a lease-purchase arrangement. They separated in 1979 but had a series of temporary reconciliations through 1983. She made the payments on the Mercedes and, with the help of her sister, paid the balance due the leasing company in 1983, taking title in her own name.

In December 1983, Haina testified, Charleston came to her home in California and asked if he could borrow the Mercedes to go east for a hearing before the Federal Communications Commission concerning the licensing of a cellular radio project in Ohio. She agreed on condition he would install a stereo system in the car. He complied and left California in the Mercedes in January 1984. Later, he called from Ohio, saying that he needed the car for a longer time.

Haina testified that Charleston called her in March, advising that the cellular radio people had rented Kendall Hall in Lancaster County, Virginia, for business entertaining. He invited her to visit him there and sent her $1,000 to pay for the trip. She arrived in mid-March and stayed until March 31, when she returned to California by air travel, leaving the Mercedes at Kendall Hall. During her visit, Haina thought Charleston's behavior was secretive and suspicious, but her suspicions were eased to some extent because others who visited and stayed there were people she had met earlier in connection with Charleston's cellular radio business. Charleston sent her an additional $700 in April, and she returned for an additional ten-day visit, flying back to California on April 29. She denied knowledge of any illegal activities at Kendall Hall or any illegal use of her Mercedes.

At the conclusion of the evidence, the court overruled the defendant's renewed motions. The court expressed the opinion that Haina had testified truthfully, but that the Mercedes actually was owned, at least in part, by Everett Charleston, who had been involved in the distribution of marijuana. The court entered an order on April 5, 1985, forfeiting the vehicle to the Commonwealth.

Haina's appeal raises three questions: (1) whether the Commonwealth's failure to file its information within the statutory 60-day period is fatal to the forfeiture proceeding; (2) whether the Commonwealth's failure to prove that any illegal substance was found in the vehicle was fatal to the forfeiture; and (3) whether the evidence was sufficient to prove that the vehicle had been used in the distribution of a controlled substance. Because we answer the first question in the affirmative, it is unnecessary to address the second and third.

■ The forfeiture was based upon Code § 18.2-249 which, in 1984, provided in pertinent part:

All . . . motor vehicles . . . used in connection with the illegal manufacture, sale or distribution of controlled substances . . . shall be forfeited to the Commonwealth and may be seized by an officer to be disposed of in the same manner as provided for the disposition of motor vehicles confiscated for illegally transporting alcoholic beverages and all of the provisions specified in § 4-56 of this Code shall apply mutatis mutandis.

■ Code § 4-56 relates to the forfeiture of vehicles used for the illegal transportation of alcoholic beverages. In early 1984,* it provided that an officer seizing such a vehicle shall "forthwith" report the seizure, in writing, to the commonwealth's attorney. Code § 4-56(b). The statute requires the commonwealth's attorney "forthwith" to notify the Commissioner of the Division of Motor Vehicles of the seizure. The commissioner is required "promptly" to certify the registration information concerning the vehicle to the commonwealth's attorney and "forthwith" to notify the registered owner and lienor of the proceeding. Code § 4-56(c). The statute then provides: "Within sixty days after receiving notice of any such seizure, the attorney for the Commonwealth shall file, in the name of the Commonwealth, an information against the seized property, in the clerk's office of the circuit court of the county . . . wherein the seizure was made." § 4-56(d).

■ In *Cason v. Commonwealth*, 181 Va. 297, 24 S.E.2d 435 (1943), we considered the effect of an untimely information filed by a commonwealth's attorney against a motor vehicle under former Code § 4675(38a), the statutory predecessor to present Code § 4-56. The statute under consideration there differed from the present section in two respects, neither of which is material here: the commonwealth's attorney had only ten days, rather than sixty days, within which to file an information, and if he failed so to file, the Attorney General was authorized to do so within twelve months. We held that the statutory language was plain, unambiguous, and mandatory. The failure of the commonwealth's attorney to file within the prescribed time rendered the information "a nullity . . . the same as if no information had been filed." *Id.* at 303-04, 24 S.E.2d at 438. We observed that the court had jurisdiction

---

* Code § 18.2-249 was substantially rewritten in 1985 and 1986, but not in particulars pertinent to this appeal. Code § 4-56 was amended effective July 1, 1984, but not in particulars pertinent to this appeal.

of the subject matter only by reason of the information. *Id.* at 303, 24 S.E.2d at 438. Accordingly, we reversed an order of forfeiture entered by the trial court.

■ We adhere to the view expressed in *Cason.* The time period prescribed by Code § 4-56 for the filing of the commonwealth's attorney's information is jurisdictional. Because the information in the present case was filed untimely, we will reverse the order of forfeiture and remand the proceeding to the trial court for the entry of such orders as may be requisite, consistent with this opinion, to restore the seized property to its owner.

*Reversed and remanded.*